# Illinois Official Reports

## Appellate Court

---

### *People v. Haddad*, 2021 IL App (3d) 180545

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. IBRAHIM H. HADDAD, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-18-0545 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | February 9, 2021<br><br>March 10, 2021<br>March 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-CF-162; the Hon. Daniel L. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Jasmine D. Morton, of State's Attorney Appellate Prosecutor's Office, of counsel), for the People.<br><br>Ted P. Hammel and Kristen Messamore, of Hammel Law Offices, P.C., and Frank P. Andreano, of Andreano Law, P.C., both of Joliet, for appellee. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion. Presiding Justice McDade and Justice Holdridge concurred in the judgment and opinion.

## OPINION

¶ 1    The State filed a certificate of substantial impairment pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017) and appeals an order of the trial court granting defendant's motion to suppress evidence. On appeal, the State argues that the officer had probable cause, or at least a reasonable, articulable suspicion, sufficient to justify stopping defendant's vehicle. Thus, the evidence gathered subsequent to the traffic stop should be admissible.

¶ 2                                    I. BACKGROUND

¶ 3    On February 1, 2017, the State charged defendant, Ibrahim H. Haddad, by indictment with unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(f) (West 2016)) and unlawful possession of cannabis (*id.* § 4(f)). The charges resulted from an officer's discovery of cannabis in defendant's vehicle following a traffic stop on January 19, 2017. Defendant filed a motion to suppress evidence (motion to suppress) arguing, among other things, that law enforcement unlawfully arrested, seized, and searched defendant's person and vehicle without a warrant or probable cause.

¶ 4    On May 29, 2018, the trial court conducted a hearing on defendant's motion to suppress. Defendant testified that on January 19, 2017, at approximately 8:30 p.m., defendant was driving northbound on 80th Avenue in Tinley Park, Illinois, in a 2012 Audi A6. Defendant recalled travelling on 80th Avenue for one to two minutes. According to defendant, the speed limit on 80th Avenue was first 45 miles per hour (mph) and then 40 mph. Defendant testified that there were no vehicles traveling in front of him when law enforcement pulled his vehicle over.

¶ 5    Defendant testified that his vehicle had adaptive cruise control. While driving down 80th Avenue, defendant had his cruise control set at 40 mph. Defendant explained that when his vehicle's cruise control is activated and detects a vehicle ahead of his vehicle, the vehicle issues a visual red alert signal and the system automatically adjusts the distance between defendant's vehicle and the other vehicle to a safe distance. Defendant stated that the alert signal was not activated just before the traffic stop and the cruise control was not required to adjust his distance between vehicles travelling in the same direction ahead of defendant. Defendant had his vehicle inspected every 10,000 miles and testified that his adaptive cruise control was in working order that night.

¶ 6    Russell Borrowdale, a tactical officer who worked for the Tinley Park Police Department, testified that on January 19, 2017, at approximately 8:30 p.m., he learned of an ongoing Illinois State Police investigation near a Hilton Garden Inn in Tinley Park. At the time, Borrowdale and Detective Zylka were in the area near 183rd Street and 92nd Avenue. The officers were informed that the investigation led to an Audi sedan, and the officers were given the vehicle's registration number.

¶ 7        Shortly thereafter, the officers observed and began travelling behind the Audi. According to Borrowdale, he followed approximately 150 to 200 yards behind the Audi for 4 to 6 minutes, or 2.5 to 3 miles. Borrowdale described the traffic as "very light." Borrowdale stated that it was his intention to observe the vehicle for any traffic infractions. Borrowdale did not observe any traffic violations until the Audi reached the intersection at 171st Street. At that location, Borrowdale observed the Audi "traveling approximately one car length behind the vehicle in front of it, traveling approximately 40 miles per hour with steady rain coming down." Borrowdale stated that "[t]he vehicle was following too closely, based on the speed, the conditions and the distance between that and the vehicle in front of it," in violation of the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2016)). Borrowdale did not observe any other traffic infractions.

¶ 8        Borrowdale determined that the silver Audi travelled one car length behind the car in front of it based on his daily interactions with traffic, his knowledge of what cars can fit in between gaps, and the fact that the average length of a car is approximately 18 feet. In Borrowdale's estimation, the silver Audi travelled approximately 18 feet behind the vehicle in front of it. Borrowdale believed that a vehicle should have one car length between it and the vehicle in front of it for every 10 mph in optimal driving conditions. Borrowdale conceded that the Code does not prescribe an actual distance for following too closely, stating that the Code was subjective for that violation. Borrowdale initiated a traffic stop at the 16600 block of 80th Avenue. Following Borrowdale's testimony, the parties presented their arguments on the motion to suppress to the court.

¶ 9        After taking the motion under advisement, the trial court announced its ruling in open court by stating:

"Okay. This is the Court's ruling as to pretext stops. I find the standard in People versus Dennis Smith. If police officers—officers are objectively doing what they are legally authorized to do, their actions are not to be questioned on the basis of any subjective intent which they have acted.

I think it's clear this is a pretext stop. He followed [defendant] for three miles. So it goes to the two cases that the State has given me, People versus Mayberry (phonetic). And in that case the officer testified that the car was directly behind him and was so close to him that it alarmed him. I think he had an objective standard there because he could estimate because he saw the car right in his rearview mirror.

And in People versus Wolford (phonetic), I think it explains on these types of stops, the [Code] has recommended—the recommendation two-second intervals and he did count the lines in that matter as reference points. And he said it was less than one-second lines and that's why he pulled him over. He had an objective standard there.

I think the police officer in this instance did not use an objective standard, he used a subjective standard. Therefore, I am going to grant the defendant's motion to suppress."

¶ 10       On July 11, 2018, the State filed a motion to reconsider, which the trial court subsequently denied. On September 12, 2018, the State filed a notice of appeal along with a certificate of substantial impairment pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017), alleging that the trial court's ruling on defendant's motion to suppress substantially impaired the State's ability to proceed to trial.

¶ 11                                    II. ANALYSIS

¶ 12     On appeal, the State argues the trial court erred by granting defendant's motion to suppress because Officer Borrowdale had probable cause—or at least a reasonable, articulable suspicion—sufficient to justify stopping defendant's vehicle, thereby rendering the evidence discovered admissible. Defendant argues the disputed facts, coupled with our deferential standard of review, should lead this court to affirm the trial court's ruling on defendant's motion to suppress.

¶ 13     At the outset, the parties dispute the applicable standard of review. The State argues we should employ a dual standard of review when reviewing a ruling on a motion to suppress. According to the dual standard, the trial court's factual findings are upheld unless they are against the manifest weight of the evidence, and a *de novo* standard applies to the ultimate legal question of whether suppression is warranted. *People v. Absher*, 242 Ill. 2d 77, 82 (2011); see *Ornelas v. United States*, 517 U.S. 690, 699 (1996). However, defendant points out that the trial court's ruling was based on a credibility determination of disputed facts and argues *de novo* review is inappropriate.

¶ 14     Our supreme court instructs that *de novo* review is only appropriate where the trial court's ruling is not premised on any determination of facts and/or any assessment of the credibility of the witnesses. See *People v. Wright*, 183 Ill. 2d 16, 21 (1998); *People v. Nicolosi*, 2019 IL App (3d) 180642, ¶ 14. Here, the trial court made factual determinations regarding the accuracy of the officer's measurement of the distance between two vehicles moving in the same direction on the roadway. Therefore, we conclude the trial court's ruling in this appeal should not be set aside unless it was manifestly erroneous. See *Wright*, 183 Ill. 2d at 21; *Nicolosi*, 2019 IL App (3d) 180642, ¶ 14. While we agree with defendant's position that *de novo* review is inapplicable, we note that the application of a *de novo* standard of review would not change the outcome of this appeal.

¶ 15     The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution guarantee citizens the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Stopping a motor vehicle and detaining its passengers constitutes a seizure within the meaning of the fourth amendment. *People v. Wofford*, 2012 IL App (5th) 100138, ¶ 22. It is well established that traffic stops are more analogous to *Terry* stops than they are to formal arrests. Thus, they are subject to the fourth amendment's reasonableness requirement and may be justified on something less than probable cause. *People v. Maberry*, 2015 IL App (2d) 150341, ¶ 10; *People v. Close*, 238 Ill. 2d 497, 504-05 (2010); see *Terry v. Ohio*, 392 U.S. 1 (1968). When judging the reasonableness of a traffic stop, courts must apply an objective standard and scrutinize whether the facts available to the officer at the time of the stop would warrant a reasonable person to believe the traffic stop was appropriate. *Close*, 238 Ill. 2d at 505. Generally, an officer is justified in stopping a vehicle and briefly detaining the driver when he or she observes the driver commit a traffic offense. *Wofford*, 2012 IL App (5th) 100138, ¶ 22; *People v. Abdur-Rahim*, 2014 IL App (3d) 130558, ¶ 26; *People v. McQuown*, 407 Ill. App. 3d 1138, 1143 (2011).

¶ 16     Section 11-710(a) of the Code provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." 625 ILCS 5/11-710(a) (West 2016). Section 11-710(a) does not prescribe a certain distance requirement and does not define what is "reasonable and prudent."

¶ 17    With these principles in mind, the issue in this case can be narrowed down to whether Officer Borrowdale had an objectively reasonable suspicion, based on the facts available to him at the time of the stop, that defendant was following the car in front of him at a distance that was not reasonable and prudent.

¶ 18    Here, the trial court's ruling first required the trial court to resolve whether there was a vehicle on the roadway travelling ahead of the Audi. The trial court's findings did not question or reject the officer's credibility regarding the presence of a vehicle ahead of the Audi. However, the trial court found the officer's methodology when measuring the distance between the two vehicles was not reliable.

¶ 19    When ruling, the trial court found the decision in *Wofford* to be instructive. We agree. In *Wofford*, the Fifth District found an officer's decision to conduct a traffic stop objectively reasonable where the officer determined that the subject vehicle was traveling at less than a one-second interval behind a camper trailer by using the dotted lines on the highway as a reference point. *Wofford*, 2012 IL App (5th) 100138, ¶ 4. The officer explained in detail how he performed this dotted line test several times to determine that the subject vehicle travelled behind the camper trailer at less than a one-second interval, much less than the two-second interval recommended by the Illinois Rules of the Road. *Id.* ¶¶ 4-5.

¶ 20    In the instant case, the trial court noted that the officer did not rely on an objectively reasonable means of measuring the distance between the Audi and the other vehicle. This determination is well supported by the record subject to our review and should not be set aside. Here, the officer estimated the distance to be 18 feet without, for example, explaining the relationship in time and/or space measured by when the vehicle passed stationary landmarks, such as light poles or dotted lines, and the time defendant's vehicle reached the same landmarks.

¶ 21    Giving deference to the trial court's findings, as stated before ruling on the motion to suppress, we conclude that the trial court's ruling is not manifestly erroneous. For this reason, we affirm the trial court's decision granting defendant's motion to suppress.

¶ 22                                    III. CONCLUSION
¶ 23    The judgment of the circuit court of Will County is affirmed.

¶ 24    Affirmed.