THE VILLAGE OF LINCOLNSHIRE, Plaintiff-Appellant, v. TRISHA L. KELLY, Defendant-Appellee.

Second District    No. 2—06—1113

Opinion filed April 22, 2009.

P. Randall Knowles, of Smith & LaLuzerne, Ltd., of Waukegan, for appellant.

Daniel R. Zeit and Michael J. Ori, both of Fox, Lunardi & Zeit, of Waukegan, for appellee.

JUSTICE BYRNE delivered the opinion of the court:[1]

Defendant, Trisha L. Kelly, was charged with driving while under the influence of alcohol (625 ILCS 5/11—501(a)(1) (West 2006)). She

---

[1] Justice Byrne participated in this appeal and authored the opinion, but

moved to quash her arrest and suppress the evidence. The trial court granted the motion. The Village of Lincolnshire (the Village) filed a motion to reconsider, which was denied. Thereafter, the Village filed a certificate of impairment and appealed. For the reasons that follow, we reverse and remand the cause for further proceedings.

The following evidence was taken from the agreed statement of facts and the record. At the hearing on the motion to quash arrest and suppress evidence, Lincolnshire police officer Christopher Covelli testified that, on June 4, 2005, around 2:15 a.m., he clocked defendant's vehicle traveling west on Route 22 at 55 miles per hour in a posted 35-mile-per-hour zone. Defendant pulled over her vehicle after Officer Covelli activated his emergency lights. It was dark outside. There was no other traffic. Officer Covelli observed no other violations committed by defendant, including no improper lane usage.

Officer Covelli testified that he first noticed the odor of alcohol during his initial conversation with defendant, while she was still seated in her vehicle. He stated that the odor was strong. Defendant told him first that she was coming from the Lincolnshire area, but, when he asked where in the Lincolnshire area, she then said that she was coming from the Vernon Hills area and added, "we got really lost." Defendant had been at T.G.I. Friday's in Mundelein. Defendant at first admitted she had drunk one glass of wine.

Officer Covelli stated that, when he spoke with defendant, she had no problem with her speech. Defendant handed her driver's license to Officer Covelli with no difficulty, and he observed no problem with her hand dexterity. Defendant was 21 years old at the time. Other than what he testified to, Officer Covelli observed no indicia of intoxication. Officer Covelli asked defendant to get out of the car. Officer Covelli stated that, when he asked defendant to get out of her car, she was not free to leave.

Officer Covelli described defendant as polite and stated that she had no trouble walking to the back of her car. Defendant agreed to submit to some field sobriety tests, which Officer Covelli then administered. Officer Covelli spent about 51 seconds speaking with defendant before he asked her to step out of her car to take the field sobriety tests.

Officer Covelli first administered the horizontal gaze nystagmus (HGN) test, which he had administered approximately 40 to 50 times

has since retired. Our supreme court has held that the departure of an authoring judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Kinne v. Duncan*, 383 Ill. 110, 113-14 (1943).

since graduating from the police academy. In his opinion, defendant failed the test. After the HGN test, defendant again admitted drinking one glass of wine a few hours earlier and stated that she had not eaten anything. Officer Covelli could still smell the strong odor of an alcoholic beverage.

Officer Covelli next administered a portable breath test to defendant, and she blew a 0.100. After taking the portable breath test, defendant admitted drinking two glasses of wine and told Officer Covelli that it had been an hour and a half since then. Officer Covelli did not arrest defendant on the breath test result because he wanted to observe if defendant's ability to drive was impaired. He wanted to see if other field sobriety tests coincided with the breath test.

Defendant asked if she could remove her shoes before taking the other field sobriety tests because the shoes were uncomfortable, and Officer Covelli allowed it. Officer Covelli administered the balancing test. Defendant showed some unsteadiness, but Officer Covelli could not say that defendant failed or passed the test. Defendant passed the one leg stand test, but she did not pass the walk and turn test.

Officer Covelli noted that defendant had no problem with her eyes, her clothes were orderly, and she took no unusual actions. Officer Covelli acknowledged that drinking some alcohol and driving is okay if a person is not over the legal limit on the breath test. However, defendant's better performance on some of the later field sobriety tests did not change Officer Covelli's opinion that defendant was under the influence of alcohol. Officer Covelli's squad car video camera recorded the stop. He had viewed the recording since the arrest and verified that it accurately portrayed what had taken place.

The trial court found that the officer's testimony was forthright. The trial court further found that the officer had good reason to stop the vehicle. However, the trial court held that, based on case law, the officer needed more than the smell of an alcoholic beverage on defendant's breath and an admission of drinking to form the reasonable, articulable suspicion necessary to ask defendant to step out of her car or take field sobriety tests. Accordingly, the trial court granted defendant's motion, finding that defendant was seized in violation of her fourth amendment rights when Officer Covelli performed the field sobriety tests on defendant. Following the denial of the Village's motion to reconsider, the Village timely appeals.

On appeal, the Village argues that the trial court erred in granting the motion to quash and suppress. In particular, the Village contends that the administration of the field sobriety tests to defendant did not result in an unconstitutional seizure, because the officer had a reasonable, articulable suspicion that defendant was driving while under the

influence in violation of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501 (West 2004)), based on the officer's detection of the strong odor of alcohol, defendant's admission that she had consumed an alcoholic beverage, her apparent confusion or disorientation when asked where she was coming from, and her statement that she "got really lost" on her drive home.

In reviewing a motion to suppress, we give great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). "Accordingly, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted." *Luedemann*, 222 Ill. 2d at 542. Because the material facts are undisputed, we address only the ultimate question.

"Courts have divided police-citizen encounters into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detention, or '*Terry* stops,' \*\*\*; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544. A *Terry* stop is at issue in the present case.

Under the United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), a limited investigatory stop is permissible where there exists a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Whether a *Terry* stop is supported by a reasonable suspicion depends on the facts known to the officer at the time of the stop. *People v. DiPace*, 354 Ill. App. 3d 104, 108 (2004). Here, there is no issue as to the lawfulness of the initial stop of the vehicle; defendant was speeding. Rather, this appeal concerns only the lawfulness of the officer's conduct following the initial stop.

■ Before addressing the issue, we observe that in *People v. Starnes*, 374 Ill. App. 3d 329, 334 (2007), this court concluded that the Illinois Supreme Court in *People v. Caballes*, 221 Ill. 2d 282 (2006), abandoned the scope requirement previously employed by *People v. Gonzalez*, 204 Ill. 2d 220, 225 (2003). Thus, the validity of an officer's action during a traffic stop is no longer determined by whether it is related in scope to the circumstances that justified the interference in the first instance. Instead, under more recent United States Supreme Court and Illinois Supreme Court authority, the validity is determined

independently. Police action that does not otherwise violate the fourth amendment is permissible even if it goes beyond the scope of the stop. See *Starnes*, 374 Ill. App. 3d at 334; see also *People v. Driggers*, 222 Ill. 2d 65 (2006) (police action that does not unreasonably prolong a lawful traffic stop or independently trigger fourth amendment concerns is not forbidden merely because it changes the character of the stop); *People v. Roberson*, 367 Ill. App. 3d 193 (2006) (warrant check permissible even though it exceeded scope of the stop, because it did not cause detention to last longer than reasonably necessary for traffic stop or infringe on a legitimate privacy interest of defendant).

We also note that "mere police questioning is not a seizure." *Starnes*, 374 Ill. App. 3d at 334. Even when officers have no basis for suspecting a particular person, they may generally ask questions of that individual, ask to examine that person's identification, and request consent to search his or her luggage. *Florida v. Bostick*, 501 U.S. 429, 434-35, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991). However, a lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 160 L. Ed. 2d 842, 846, 125 S. Ct. 834, 837 (2005).

Given the abandonment of the scope requirement of the *Gonzalez* test and that police questioning is not *per se* considered a seizure, we turn to the Village's contention in this case concerning the lawfulness of Officer Covelli's conduct following the initial stop. We conclude that, after Officer Covelli made a valid traffic stop of defendant's vehicle, he was entitled to ask a number of questions without any further basis. When he initially spoke to defendant to obtain her driver's license, he detected a strong odor of alcohol. Upon detecting the odor of alcohol, it was not unreasonable for him to ask defendant whether she had had anything to drink, which he did while she was still seated in her vehicle. We note that the trial court found the officer's testimony to be credible and that the record does not suggest official interrogation. Moreover, defendant was under no obligation to answer or comply. In any event, defendant admitted that she had drunk a glass of wine. The fact that the questions exceeded the scope of the traffic stop is legally irrelevant. The officer's questions to defendant while she was seated in the car thus did not implicate the fourth amendment, and, because the questions consumed only 51 seconds, they did not unreasonably prolong the stop.

Although we find that the officer's questions while defendant was seated in the car did not implicate the fourth amendment or unreasonably prolong the stop, we must still examine whether defendant's submission to field sobriety testing amounted to a seizure under the

fourth amendment. There appears to be ample authority to support a holding that submission to field sobriety testing is a seizure under the fourth amendment. See *People v. Walter*, 374 Ill. App. 3d 763, 767-71 (2007) (and cases cited therein). In Illinois, however, submission to field sobriety testing does not *per se* amount to an arrest. *Walter*, 374 Ill. App. 3d at 772. Whether a seizure has occurred in a given case depends on whether, given all the circumstances surrounding the incident, a reasonable person in the defendant's place would have believed that he or she was not free to leave. *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). Illinois law requires reasonable suspicion unless the circumstances otherwise show that an arrest took place. *Walter*, 374 Ill. App. 3d at 773.

Here, we cannot conclude that, through the time defendant submitted to field sobriety testing, Officer Covelli's encounter with her constituted an arrest rather than a stop. Aside from Officer Covelli administering field sobriety testing and possessing defendant's license, none of the factors indicating that a suspect has been arrested for DUI are present in this case. See *People v. Fortney*, 297 Ill. App. 3d 79, 86 (1998) (factors). There is no evidence that at the time defendant submitted to the testing she had been issued a citation, handcuffed, or placed in a squad car. Also, defendant does not argue that she was under arrest at the time she submitted to the testing.

Because we conclude that defendant was not placed under arrest at the time she submitted to the testing, we proceed then under a *Terry* analysis. A person commits DUI when she drives or is in actual physical control of a motor vehicle while under the influence of alcohol or while the alcohol concentration of the person's breath or blood is 0.08 or more. 625 ILCS 5/11—501(a)(1), (a)(2) (West 2004). Before administering the tests, Officer Covelli smelled a strong odor of alcohol. Also, defendant admitted to consuming alcohol. We find that the facts known to the officer were sufficient to create a reasonable suspicion that defendant was under the influence of alcohol and had committed DUI.

Defendant points out that she did not fumble when retrieving her license and did not slur her words. Furthermore, she was 21 years old at the time, it is not unlawful for a person of that age to consume a glass of wine, and the odor of alcohol on a person's breath does not necessarily indicate the amount of consumption. We find defendant's argument unavailing.

The test for reasonable suspicion is less exacting than that for probable cause (*People v. Culbertson*, 305 Ill. App. 3d 1015, 1024 (1999)). Moreover, even probable cause does not demand a showing

that the belief that a suspect has committed a crime be more likely true than false. *People v. Jones*, 215 Ill. 2d 261, 277 (2005), quoting *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543 (1983). Therefore, although reasonable suspicion demands more than a mere hunch (*People v. Thomas*, 198 Ill. 2d 103, 110 (2001)), the standard requires only that "a police officer must be able to point to specific, articulable facts which, when taken together with the rational inferences from those facts, reasonably warrant the intrusion" (*People v. Schacht*, 233 Ill. App. 3d 271, 275 (1992), citing *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880). For purposes of determining the existence of reasonable suspicion, "[t]he facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her." *Thomas*, 198 Ill. 2d at 110.

In light of the standard for reasonable suspicion and given Officer Covelli's experience as a police officer, he had more than a mere hunch of a DUI violation. He smelled a strong odor of alcohol and defendant admitted to drinking. Under these circumstances, we conclude that, when Officer Covelli administered the field sobriety tests to defendant, there existed a reasonable suspicion, based on specific and articulable facts, that defendant had committed DUI, and thus the testing, even if a seizure, was justified under *Terry*.

We understand the trial court's apprehension about permitting an officer to detain a driver for a minor traffic violation and then administering field sobriety tests. However, "an officer faced with these facts would be derelict in his duties if he chose not to conduct a further investigation." *Village of Plainfield v. Anderson*, 304 Ill. App. 3d 338, 342 (1999) (order quashing arrest reversed where, based on facts, limited detention to ascertain whether defendant was under the influence was reasonable).

Based on the preceding, we conclude that defendant's fourth amendment rights were not violated. Accordingly, we reverse the trial court's order granting defendant's motion to quash and suppress, and we remand the cause for further proceedings.

Reversed and remanded.

ZENOFF, P.J., and O'MALLEY, J., concur.